UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

INLAND TECHNOLOGY
INCORPORATED,

               Plaintiff,

   v.

THE ALLEN COMPANY, INC.,

               Defendant.

CASE NO. C24-5913 BHS

ORDER

THIS MATTER is before the Court on plaintiff Inland Technology Incorporated's motion to dismiss defendant The Allen Company's counterclaims, Dkt. 47, and the parties' cross-motions for summary judgment, Dkts. 80 and 89.

This is a complex trademark and business dispute. Inland and Allen sell commercial cleaning products. In 2013, Inland engaged Allen's predecessor, ATG, to market and sell Inland's trademarked "Breakthrough" industrial chemical solvent to civilian consumers. Inland alleges it granted ATG a license to use the Breakthrough mark in exchange for ATG's agreement to purchase all its solvent from Inland. Without Inland's permission, ATG obtained trademark registrations for other marks it used on the

ORDER - 1

Breakthrough solvent packaging. One of these marks, the "BCT mark," incorporates the word "Breakthrough." The other mark is "B-shield."

Allen later acquired ATG's assets, including its trademark rights and, Inland contends, the licensing agreement. Although Allen continues to use the Breakthrough mark in its packaging, it has reduced the amount of solvent it purchases from Inland. Inland suspected that Allen was using Inland's Breakthrough mark to sell solvent it obtained from other suppliers, in violation of the alleged licensing agreement.

Inland sued, asserting trademark infringement, Washington CPA, and unjust enrichment claims. Allen has since countersued, asserting similar claims, and a copyright infringement claim based on Inland's use of the BCT and B-shield marks it obtained from ATG.

## I.    BACKGROUND

Central to this dispute is Inland's trademarked "Breakthrough" industrial chemical solvent. In 1993, Inland registered the "BREAKTHROUGH" mark with the Patent and Trademark Office (USPTO). *Id.* at 4. The mark was filed under International Class 3, for "liquid cleaner to clean electronic parts" in the aerospace industry, automotive industry, and for factory equipment repair. Dkt. 12-1 at 2. Inland provides the following as an example use of its Breakthrough trademark:





Technical Data Sheet

Benzene-Free, HAP-Free Solvent

ORDER - 2

Dkt. 12 at 4.

Breakthrough is certified as military grade and has allegedly been "used for years by the Department of Defense" for weapon maintenance. Dkt. 12 at 4–5. Inland's other customers include police and sheriff's departments, government firearm training facilities, correctional facilities, automobile maintenance companies, and businesses in the aerospace industry. Dkt. 85-1. Inland sells Breakthrough in several sizes, ranging from pints and quarts to 55-gallon barrels. Dkt. 113 at 22–23.

In 2013, Inland engaged Erick Navarro, then owner of ATG Specialty Products Corporation, to sell its Breakthrough chemical to civilian consumers. Dkt. 12 at 5. Inland allowed ATG to repackage and market the chemical using the B-shield logo and the Breakthrough mark:




Dkt. 30-1 at 23; Dkt. 12 at 6–7. The packaging depicted "Breakthrough ®" and indicated that it was a "registered trademark of Inland." Dkt. 12 at 6. Inland closely followed

ATG's use of the mark and instructed Navarro on the proper use of the Breakthrough mark. Dkt. 83-7.

In 2014, ATG began using the "BCT" logo on its product packaging:



Dkt. 30-1 at 24. Sometime between 2015 and 2020[1], ATG registered the B-shield and the above BCT mark with the USPTO without Inland's permission. *Id.* at 24–26; Dkt. 86 at 9. The marks are registered under International Classes 3, 4, 13, and 21 for "gun-cleaning preparation," "cleaning implements for firearms," "gun barrel oil," "cleaning rods for firearms; gun barrel plugs; gun cleaning brushes," and "gun cleaning cloths; gun cleaning patches and rags." Dkt. 30 at 26–27.

In 2022, Allen acquired ATG's assets, including its trademark rights. Dkt. 30-1 at 25–26; Dkt. 12-5. Navarro continued communicating with Inland on Allen's behalf. Dkt. 86-6. In August, he introduced Inland to Allen representatives, asserting, "[w]e buy our Breakthrough solvent from them." Dkt. 86-6.

Allen sells firearm cleaning and maintenance products to third-party retailers such as Amazon.com, Sportsman's Warehouse, Walmart, and Cabela's, as well as through its website, www.breakthroughclean.com. Dkt. 118 at 4; Dkt. 30-1 at 22, 24.

Allen sells several products under the B-shield and BCT marks, including its High Purity, HP Pro, Universal Handgun, and Carbon Pro products. Dkt. 30-1 at 28–29. At

---

[1] The parties dispute when the USPTO awarded ATG the B-shield mark. Dkt. 31 at 7.

ORDER - 4

some point, Allen began sourcing solvent from a third-party. Dkt. 86-5. Allen's breakthroughclean.com website still asserts that "Breakthrough Clean Technologies® is a Trademark of Inland Technology Inc." Dkt. 12-7 at 2.

On August 14, 2024, Inland sent Allen a cease-and-desist letter demanding Allen stop using the Breakthrough trademark in its products, marketing, and packaging. Dkt. 12-8 at 2. Because the "product [was] being sourced elsewhere," Inland revoked Allen's authorization to use the Breakthrough brand. *Id.* at 3. Allen responded that it "has been and continues to be an active customer of Inland," and proposed more clearly labeling Inland's products on the website. *Id.* at 4. Allen denies that it had any licensing agreement with Inland. In October 2024, Inland brought this suit.

In November 2024, Inland filed a second trademark application for the Breakthrough mark. Dkt. 30-1, Exhibit A; Dkt. 47 at 7. It sought registration under International Classes 1, 3, 5, 13, and 21, stating the trademark was for "Degreasing . . . in manufacturing," "Degreasing . . . for cleaning purposes," "Lubricating oils and greases; Gun barrel oil," "Gun cleaning brushes; Gun barrel plugs; Cleaning rods for firearms," and "Gun cleaning patches and rags; Gun cleaning cloths." Dkt. 30-1 at 42–43. Inland included pictures of Allen's products incorporating the Breakthrough trademark in its application, such as:

ORDER - 5



*Id.* at 49.

Inland brings five claims against Allen: trademark infringement (15 U.S.C. § 1114), common law trademark infringement (15 U.S.C. § 1125 and RCW 19.77.900), unfair competition and false advertising (15 U.S.C. § 1125), Washington Consumer Protection Act (CPA) (RCW 19.86), and unjust enrichment. Dkt. 12. Its trademark infringement, CPA, and unjust enrichment claims are based on Allen's unauthorized, commercial use of the "trademarks BREAKTHROUGH and BREAKTHROUGH CLEAN TECHNOLOGIES." *Id.* It contends Allen "falsely holds out to consumers that the source of its military-grade solvent is Inland." *Id.* at 12, 16. Inland's unfair competition and false advertising claim is based on Allen's allegedly false representations that its products are "Made in the USA." *Id.* at 17.

Allen alleges Inland uses the B-shield and BCT marks in commerce. It brings trademark infringement (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125), and CPA (RCW 19.86) counterclaims or alternatively, declaratory relief rendering Inland's November 2024 trademark application void. Dkt. 30-1 at 33–36. Allen also

ORDER - 6

brings a copyright infringement (17 U.S.C. § 106) counterclaim for Inland's inclusion of Allen's product labels in its November 2024 trademark application. *Id.* at 26, 37–38.

Inland moves to dismiss all of Allen's counterclaims for lack of plausibility. Dkt. 47. It contends that even if Allen has valid trademark registrations, which it does not concede, Allen provides no evidence that Inland has commercially used the B-shield and BCT marks. *Id.* at 13–15. It argues Allen's copyright infringement claim fails because the labels are not copyrightable and Inland's reproduction of them falls under fair use. *Id.* at 19–22.

Both parties also move for summary judgment. Inland seeks summary judgment on its trademark infringement, CPA, and unjust enrichment claims, and Allen's trademark and copyright counterclaims. Dkt. 86 at 15, 25–26. It argues the Breakthrough mark is validly registered, Allen's alleged infringement likely confused consumers, and that Allen cannot meet its burden of proof on the trademark and copyright infringement counterclaims. *Id.*

Allen moves for summary judgment on all of Inland's claims, asserting several equitable defenses. Dkt. 97. It argues 15 U.S.C. § 1125(c)(6), which bars state trademark dilution claims for federally registered marks, precludes Inland from pursuing its false advertising claims, and that in any case, Inland lacks standing to do so. *Id.* at 24–25. Finally, Allen contends Inland cannot prove the elements of false advertising, CPA, and unjust enrichment. *Id.* at 27–33.

The issues are addressed in turn.

## II.    DISCUSSION

**A.    Allen's counterclaims are plausible**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Although courts must accept as true the complaint's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines

that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). Courts may also deny leave to amend when the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Because Inland moves for summary judgment on Allen's trademark and copyright counterclaims arguing insufficiency of the evidence, its motion to dismiss those claims is moot.

Allen's false designation of origin and CPA counterclaims are similar to the trademark infringement claim. They turn on likelihood of consumer confusion, and thus are plausible. *See Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015).

Allen's requested alternative relief, to void Inland's 2024 trademark application, is similarly plausible. It alleges Inland made false statements to the USPTO about the Breakthrough mark's use in commerce because the example products it included in its application were Allen's, not its own. Dkt. 30-1 at 36–37, 47–49. Inland argues it did not represent to the USPTO that it owned the products depicted in its trademark application, but instead attested to the use of its Breakthrough trademark on and in connection with Allen's products. Dkt. 50 at 6–7; Dkt. 30-1 at 44–45. It contends that Allen's licensed use of the mark "inures to [Inland's] benefit" under 15 U.S.C. § 1055. Dkt. 50 at 6–7. Whether Allen held a valid license is an inherently factual issue on which the parties

ORDER - 9

vehemently disagree in their summary judgment motions. Accordingly, Allen sufficiently alleges Inland's trademark application is voidable.

Allen's counterclaims are plausible and Inland's motion to dismiss, Dkt. 47, is therefore DENIED.

**B.      Summary judgment is inappropriate because several factual issues remain.**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248.

On cross-motions, the defendant bears the burden of showing that there is no evidence which supports an element essential to the plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, the plaintiff "must prove each essential element by undisputed facts." *McNertney v. Marshall*, No. C-91-2605-DLJ, 1994 WL 118276, at *2 (N.D. Cal. Mar. 4, 1994) (citing *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). Either party may defeat summary judgment by showing there is a genuine issue of material fact for trial. *Id.*; *Anderson*, 477 U.S. at 250. Although the parties may assert that there are no contested factual issues, this is ultimately the Court's

ORDER - 10

responsibility to determine. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

Because of the intensely factual nature of trademark disputes, summary judgment is generally disfavored in the trademark arena. *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1109 (9th Cir. 1999) (citing *Levi Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1356 n. 5 (9th Cir. 1985)).

Inland argues its trademark is incontestable and that Allen's unauthorized use after Inland terminated its license to use the Breakthrough mark establishes a likelihood of consumer confusion. Dkt. 86 at 15–22. Allen denies the existence of any agreement and further responds that its alleged infringement did not cause any consumer confusion. *Id.* at 14, 19–20.

**1.     Inland's trademark infringement and CPA claims depend on disputed questions of fact.**

Inland's 15 U.S.C. § § 1114, 1125 and RCW 19.77.900 trademark claims, and its CPA claim, all require Inland to prove that it had a licensing agreement that Allen breached or that Allen's use of the mark otherwise caused a likelihood of consumer confusion.

To succeed on a trademark infringement claim, a plaintiff must demonstrate (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's commercial use or reproduction of the mark causes a likelihood of confusion. 15 U.S.C. § 1114; *Converse, Inc. v. Int'l Trade Comm'n Skechers U.S.A., Inc.*, 909 F.3d 1110, 1116 (Fed. Cir. 2018); *Powerwand Inc. v. Hefai Neniang Trading Co.*, No. 2:22-CV-01413-

JHC, 2023 WL 4201748, at *3 (W.D. Wash. 2023). A RCW 19.77.900 trademark claim requires the same analysis as well. *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*, No. C22-0825JLR, 2022 WL 4131599, at *12 (W.D. Wash. 2022) (the elements of a Washington common law trademark claim are (1) ownership of a valid trademark and (2) defendant's unauthorized use of the trademark is likely to cause consumer confusion).

To succeed on a false designation of origin claim, Inland must show that Allen used in commerce any "word, term, name, symbol, or device" which is "likely to cause "confusion, mistake, or deception" as to the affiliation, connection, or origin of the Allen's goods or services. 15 U.S.C. 1125(a)(1)(A); *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1015 (N.D. Cal. 2015). Where the plaintiff's § 1125 claim is based on alleged trademark infringement, as is the case here, "the legal analysis under the two sections [§§ 1114, 1125] is essentially identical." *Lodestar Anstalt v. Bacardi & Co. Ltd.*, 31 F.4th 1228, 1245 (9th Cir. 2022); Dkt. 12 at 16–18.

Washington's CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. The plaintiff must establish five elements to succeed on a CPA claim: (1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 73, 170 P.3d 10 (2007).

CPA and trademark infringement claims are linked. "Absent unusual circumstances, the analysis of a CPA claim will follow that of the trademark infringement

and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010). "The elements necessary to establish a likelihood of confusion for common law and statutory unfair competition claims in Washington are the same as for federal trademark infringement and unfair competition." *Id.*

There is no dispute as to the Breakthrough mark's validity or ownership. The only issue is whether Allen's use of the mark likely caused confusion. Inland claims Allen's use caused "forward confusion," where a "look-alike, sound-alike, feel-alike unknown tries to cash in on a famous mark's goodwill." *Lodestar Anstalt*, 31 F.4th at 1252 (citation modified); Dkt. 12 at 15. In other words, Inland alleges consumers are likely to be "bamboozled into thinking" Allen's goods are authorized or sponsored by Inland. *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

### a.    *Sleekcraft* factors

The Ninth Circuit applies the eight *Sleekcraft* factors to determine the likelihood of confusion. *Top Brand LLC v. Cozy Comfort Co. LLC*, 143 F.4th 1349, 1364 (Fed. Cir. 2025) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated in part on other grounds by Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 810 n.19 (9th Cir. 2003)). These eight factors are:

> (1) the strength of the protected mark; (2) proximity or relatedness of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the degree of care customers are likely to exercise in purchasing the goods; (6) the accused infringer's intent in selecting the mark; (7) the marketing channels used; and (8) the likelihood of expansion into other markets.

*Id.* The factors are "neither exhaustive nor dispositive; it is the totality of facts in a given case" that matters. *Lodestar Anstalt*, 31 F.4th at 1252.

"Likelihood of confusion is a factual determination," and courts often find likelihood of confusion is best determined by the factfinder. *Id.* at 1031. The Ninth Circuit has "cautioned that district courts should grant summary judgment motions regarding the likelihood of confusion sparingly, as careful assessment of the pertinent factors that go into determining likelihood of confusion usually requires a full record." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1210 (9th Cir. 2012) (citation modified).

### i. Strength of the mark

The strength of the mark depends on its "conceptual strength and commercial strength." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Conceptual strength "depends largely on the obviousness of [the mark's] connection to the good or service to which it refers." *JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (citing *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1032–33 (9th Cir. 2010)). A mark can be conceptually classified along a spectrum of increasing inherent distinctiveness and strength: generic, descriptive, suggestive, arbitrary, and fanciful. *Id.* "The more distinctive the mark, the more readily it qualifies" for USPTO registration. *United States Pat. & Trademark Off. v. Booking.com B. V.*, 591 U.S. 549, 553 (2020). Federal registration alone, however, is not dispositive of distinctiveness. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149 (9th Cir. 2011).

Commercial strength depends on "actual marketplace recognition," which can transform "a suggestive mark into a strong mark." *Id.* (citation modified). Significant advertising expenditures, length of exclusive use, and large market presence, for example, can prove marketplace recognition. *Id.*; *GoTo.com*, 202 F.3d at 1207–08; *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). A "crowded field of look-alike marks" may lead consumers to more "carefully pick out one mark from another." *Booking.com*, 591 U.S. at 562 (citation modified). On the other hand, "extensive third party use of similar marks on similar goods" may signal a mark's commercial weakness. *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003).

The Breakthrough mark was registered in 1993, and Allen concedes it is at least suggestive. Dkt. 97 at 14. The parties disagree on the mark's commercial strength. While the term "Breakthrough" appears in only seven other trademarks in International Class 3, Dkt. 120-3, in favor of Inland's exclusive market presence in this field, Inland provides no other evidence of the mark's commercial recognition. The Breakthrough mark's strength cannot be determined as a matter of law at this stage.

**ii. Relatedness of goods**

"Where goods are related or complementary, the danger of consumer confusion is heightened." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1291 (9th Cir. 1992). Proximity of the parties' goods exists where they are (1) complementary, (2) sold to the same class of purchasers, or (3) are similar in use or function. *Matrix Motor Co.*, 290 F. Supp. 2d at 1092 (citing *Sleekcraft*, 599 F.2d at 350). The Court must assess

whether consumers are likely to associate Inland's Breakthrough mark with Allen's goods. *Fortune Dynamic*, 618 F.3d at 1035.

The record is not sufficiently developed to decide relatedness of the goods on summary judgment. Inland sells solvent to industrial and enterprise customers, Dkt. 113 at 4, 22, whereas Allen sells its product to retailers and directly to consumers, Dkt. 118 at 4; Dkt. 30-1 at 22, 24. Allen sells solvent stand-alone as well as in "combination with other products such as gun cleaning kits." Dkt. 118 at 4. Although these may comprise different classes of purchasers, Inland and Allen's goods are similar in use and may well be complementary. It is entirely possible, for example, that Inland's military consumers may be interested in Allen's gun cleaning kits. *See Fortune Dynamic*, 618 F.3d at 1035 (tangible goods sold to the same consumers had an "intuitively close relationship" that made them complementary). Factual issues remain as to the relatedness of the goods.

**iii. Similarity of the marks**

Similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." *JL Beverage*, 828 F.3d at 1109 (citing *GoTo.com*, 202 F.3d at 1205). Similarity is assessed by "appearance, sound, and meaning." *Id.* (citing *Fortune Dynamic*, 618 F.3d at 1032). The marks are considered "in their entirety and as they appear in the marketplace," and "similarities are weighed more heavily than differences." *Id.*

The marks are identical in sound and because they both appear on cleaning products, they are very similar in meaning. Their appearance, however, differs. Inland's registration of Breakthrough is "standard," meaning it is a "singular word with no

stylization." Dkt. 112 at 19; Dkt. 12-1. In contrast, Allen's use of Breakthrough in its BCT mark is stylized; it utilizes various fonts and colors, and appears with its B-shield mark. Dkt. 12-1; Dkt. 97 at 8. And the words "Clean Technologies" appear under Breakthrough. *Id.*

Because similarities are weighed more heavily than differences, the Court leaves whether the marks create the same "commercial impression"—to the jury. *JL Beverage*, 828 F.3d at 1109. The similarity of the marks remains a genuine issue of material fact.

### iv. Evidence of actual confusion

Actual evidence of consumer confusion due to the infringing mark weighs in favor of a likelihood of confusion. *Fortune Dynamic*, 618 F.3d at 1035. Such proof can come in via surveys and declarations, for example, though evidence from "partial sources possesses very limited probative value." *JL Beverage*, 828 F.3d at 1110–11 (citation modified).

Although Inland offers several instances of consumer confusion, these are subject to factual disputes. For example, Inland asserts that in August 2024, a customer emailed Allen seeking to purchase a 55-gallon barrel of Breakthrough solvent, attaching an image of Inland's barrel. Dkt. 86 at 22–23; Dkt. 86-13 at 2. Allen then referred the customer to Inland. *Id.* Allen contends the sender of that email was an "existing Inland customer . . . familiar with Inland's products" because they had purchased solvent from Inland as early as 2019. Dkt. 112 at 20–21; Dkt. 115.

Inland's second example is more compelling. An Inland customer worried that Inland's Breakthrough's product would be confused with Allen's asked, "is there anyway

to remove Breakthrough? . . . I do not want Walmart and Bass Pro thinking this is those other jokers." Dkt. 86 at 22; Dkt. 86-14 at 2.

There are factual issues underlying alleged consumer confusion.

**v. Sophistication of consumer**

The next factor is the "relative sophistication of the relevant consumer," where the Court must assess the "degree of care likely to be exercised by that consumer." *Fortune Dynamic*, 618 F.3d at 1038. This standard includes the "ignorant and the credulous," and expects "the typical buyer to be more discerning—and less easily confused—when purchasing expensive items." *Id.*

Allen persuasively argues that Inland's customers are large, sophisticated enterprises or government agencies who are unlikely to get confused by Allen's use of the mark to target consumers. Dkt. 112 at 22–23. And a purchase order from 2023 demonstrates that Inland solvent can cost several thousand dollars. Dkt. 122-4 at 2. However, in view of the factual intensity of the *Sleekcraft* factors, the Court has insufficient evidence at this stage to rule as a matter of law for Allen on this factor.

**vi. Accused infringer's intent in selecting the mark**

Evidence of the defendant's intent to confuse customers is not required for a finding of likelihood of confusion. *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1131 (9th Cir. 2014). This factor favors the plaintiff "where the alleged infringer adopted his mark with knowledge, actual or constructive, that it was another's trademark." *JL Beverage*, 828 F.3d at 1111 (citation modified). When "an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the

public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Intent is nonetheless of "minimal importance" in determining the likelihood of confusion. *GoTo.com*, 202 F.3d at 1208.

Allen undoubtedly knew Inland owned the Breakthrough mark. Inland initially allowed ATG to use the mark to sell Inland's products to consumers, setting out specific instructions "concerning the proper use of trademark of Breakthrough." Dkt. 83-7 at 2. Navarro asked Inland for approval before publishing Breakthrough marketing materials. Dkt. 83-6. Even after the acquisition, Navarro continued to engage with Inland on behalf of Allen. Dkt. 86-6. Allen's website explicitly states that "Breakthrough Clean Technologies® is a Trademark of Inland Technology Inc." Dkt. 12-7 at 2.

Allen does not dispute it knew that Inland owned the Breakthrough mark. Instead, it contends there is "no evidence that [it] intended to derive benefit from" the mark because Allen believed ATG still had "rights to the BCT mark." Dkt. 112 at 23–24. Whether Allen intended to trade on Inland's goodwill remains a question of fact.

### vii–viii. Marketing channels used; likelihood of expansion into other markets

Genuine factual issues also remain for the final two factors—the marketing channels used and likelihood of expansion into other markets.

To assess market convergence, the Court considers "whether the parties' customer bases overlap and how the parties advertise and market their products." *Pom Wonderful*, 775 F.3d at 1130. Finally, "a strong possibility of expansion into competing markets" weighs in favor of a likelihood of confusion. *E. & J. Gallo Winery*, 967 F.2d at 1293.

Although the parties have argued significantly about the consumer base and the different platforms through which Inland and Allen sell solvent, there remains the possibility that the parties' customers overlap. The Court similarly does not have enough facts at this stage to determine whether Inland sought to expand into the retail and direct-to-consumer market.

The Court cannot determine the likelihood of confusion as a matter of law at this stage because genuine factual disputes underlie nearly every *Sleekcraft* factor.

**b.      Licensor-Licensee dispute**

In disputes between a trademark licensee and licensor, the Court need not do a *Sleekcraft* analysis because the marks are "identical by virtue of the [licensing] Agreement." *Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008). "Where a licensee persists in the unauthorized use of a licensor's trademark, courts have found that the continued use alone establishes a likelihood of consumer confusion." *Sun Microsystems, Inc. v. Microsoft Corp.*, 999 F. Supp. 1301, 1311 (N.D. Cal. 1998). This is because a trademark's use by "related companies . . . inure[s] to the benefit of the registrant." 15 U.S.C. § 1055; *Lodestar Anstalt*, 31 F.4th at 1246 n.4.

"Licenses are contracts 'governed by ordinary principles of state contract law.'" *Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1130 (9th Cir. 2006) (quoting *Power Lift, Inc. v. Weatherford Nipple–Up Systems, Inc.,* 871 F.2d 1082, 1085 (Fed. Cir. 1989)). Course of conduct or an agreement may provide evidence of an implied contract. *Id.* "Naked licensing occurs when the licensor fails to exercise adequate quality control over the licensee," resulting in the "trademark's

ceasing to function as a symbol of quality and a controlled source." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010).

Unsurprisingly, the parties vehemently disagree over the existence of any licensing agreement. Allen argues that it was never a Breakthrough licensee. Dkt. 112 at 8–9. Although the record includes draft licensing agreements, Dkt. 85-3, Allen contends it is not bound by those because a final contract was never executed. *Id.* at 9. Michael Robinson, Inland's president, testified that Inland never signed a license agreement with Allen. Dkt. 85-1 at 32. Allen insists that even if there was an implied license, it was naked and thus unenforceable. Dkt. 97 at 21 (citing *FreecycleSunnyvale*, 626 F.3d at 515–16 (9th Cir. 2010)). Inland disagrees, maintaining that it exercised control over the mark. Dkt. 124 at 7.

Inland argues that in 2013, it entered into an express or implied licensing agreement with Navarro that allowed ATG to use the Breakthrough mark to sell Inland's solvent. Dkt. 86 at 17–18; Dkt. 12 at 8. Robinson testified that although there was no written licensing agreement between Navarro and Inland, it "was well-known between both parties." Dkt. 98 at 20–21. Navarro sent emails seeking Inland's approval of the Breakthrough labels and in response, Inland specified the ways in which ATG could use the mark. *Id.*; Dkt. 83-3 at 9. In at least one instance, Navarro implemented Inland's instructions immediately. Dkt. 83-7 at 2.

Both parties offer significant evidence in support of their positions. Whether there was an express or implied license closely controlled by Inland remains a genuine issue of material fact.

The parties' cross-motions for summary judgment on Inland's trademark and CPA claims are DENIED.

**2.      Laches is unavailable, and waiver and equitable estoppel depend on disputed questions of fact.**

Allen argues Inland's claims are barred by laches, waiver, and equitable estoppel. Dkt. 97 at 10, 23. It argues that Inland had notice of Allen's alleged use of the Breakthrough mark for years and did not act to enforce its trademark rights. *Id.* at 12–14, 24.

Inland contends laches is unavailable because any infringement was willful. Dkt. 122 at 7. It argues that equitable estoppel and waiver are inapplicable because Allen and ATG both had a license to use the Breakthrough mark. *Id.* at 21.

**a.      Laches is unavailable because Allen's conduct was willful.**

Laches "is an equitable time limitation on a party's right to bring suit, which is derived from the maxim that those who sleep on their rights, lose them." *Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*, 880 F.3d 1109, 1115 (9th Cir. 2018). A party asserting laches must show it suffered prejudice because of the plaintiff's unreasonable delay in filing suit. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002).

Laches is a "counterpart to the statute of limitations." *Id.* While they are "distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law." *Id.* The Lanham Act lacks a limitations period, so the Court looks to the most closely analogous state statute of limitations. *Id.* at 836. If the state

ORDER - 22

limitations period expired before suit was filed, there is a strong presumption in favor of laches. That presumption is reversed if the state limitations period did not expire until after suit was filed. *Pinkette Clothing, Inc. v. Cosm. Warriors Ltd.*, 894 F.3d 1015, 1025 (9th Cir. 2018).

A party with unclean hands cannot assert laches. *Jarrow*, 304 F.3d at 841. "The unclean hands doctrine 'closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" *Id.* (quoting *Precision Instr. Mfg. Co. v. Auto. Maint. Mach. Co.,* 324 U.S. 806, 814 (1945)). Where the defendant willfully infringed on the plaintiff's trademark under § 1114, or made fraudulent representations under § 1125, the unclean hands doctrine bars the defendant from asserting laches. *Id.* at 842; *Bikila v. Vibram USA Inc.*, 218 F. Supp. 3d 1206, 1211 (W.D. Wash. 2016) (citing *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 957–58 (9th Cir. 2001)).

Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark, *id.*, or "willfully blinded themselves to facts that should have put them on notice that they were . . . infringing" the plaintiff's trademark. *Atari Interactive, Inc. v. Redbubble, Inc.*, 546 F. Supp. 3d 883, 886 (N.D. Cal. 2021), *aff'd in part*, No. 21-17062, 2023 WL 4704891 (9th Cir. 2023); *see Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) (taking active steps to avoid acquiring knowledge of the infringement constitutes willful blindness).

The Court determines that if Allen infringed on the Breakthrough mark, its conduct was willful. Navarro knew Inland owned the Breakthrough mark and he

ORDER - 23

continued working for Allen after it acquired ATG. Allen knew, by way of Navarro and ATG, that Inland owned Breakthrough. In response to Inland's cease-and-desist letter, Allen proposed adding "Breakthrough® is a registered trademark of Inland Technology, Inc." Dkt. 12-9. That alone shows Allen's knowledge of Inland's rights to the mark. A reasonable jury could not find otherwise, particularly in viewing this evidence most favorably to Inland.

Because any infringement was willful, Allen cannot assert laches as a defense.

**b.      Genuine issues of material fact exist as to whether equitable estoppel and waiver apply here.**

Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it. *United States v. King Features Ent., Inc.*, 843 F.2d 394, 399 (9th Cir. 1988). "Although mere silence can be a basis for a claim of estoppel when a legal duty to speak exists, waiver must be manifested in an unequivocal manner." *adidas-Am., Inc. v. Payless Shoesource, Inc.*, 546 F. Supp. 2d 1029, 1074 (D. Or. 2008) (citation modified).

Equitable estoppel "focuses not on a party's intent, but rather on the effects of his conduct on another." *Id.* at 1075. It arises "when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief." *Id.*

Allen's waiver and estoppel arguments are largely unconvincing. It argues Inland's actions, such as approving ATG's labels and proposing a website logo, led it to believe it would not enforce its trademark rights. Dkt. 97 at 24. The Court views Inland's

involvement in ATG's marketing efforts as the opposite—an effort to control the appearance and use of its Breakthrough mark. Inland's failure to act on ATG's BCT trademark application, on the other hand, may support equitable estoppel. Moreover, whether Inland's actions can be explained by any licensing agreement is subject to factual dispute.

Whether waiver and estoppel bar Inland's claims depend on disputed questions of fact. On this ground, Allen's summary judgment motion is DENIED.

**3.     Inland is not barred from bringing state law claims under 15 U.S.C. § 1125(c)(6).**

Allen argues that 15 U.S.C. § 1125(c)(6) bars Inland from bringing its trademark, CPA, and unjust enrichment claims based on the BCT mark. Dkt. 97 at 24–25. Inland responds that § 1125(c)(6) does not apply because it has not brought a dilution claim.

A valid federal trademark registration completely bars state law claims alleging "dilution by blurring or dilution by tarnishment" or "harm to the distinctiveness or reputation of a mark, label, or form of advertisement." 15 U.S.C. § 1125(c)(6); *see In re Brunetti*, 877 F.3d 1330, 1344 (Fed. Cir. 2017), *aff'd sub nom. Iancu v. Brunetti*, 588 U.S. 388 (2019) (trademark registration is a "complete defense to state or common law claims of trademark dilution").

Inland is correct that it has not brought any state dilution claims. Its common law trademark infringement claim, under the Lanham Act and RCW 19.77.900, does not allege Allen's conduct has diluted or harmed its Breakthrough mark, but instead claims "monetary loss and irreparable injury to its business, reputation, and goodwill." Dkt. 12

at 17. Inland's state CPA and unjust enrichment claims similarly do not allege trademark dilution. Allen's § 1125(c)(6) argument therefore fails. Allen's summary judgment motion on this point is DENIED.

**4.    Inland has standing to pursue its false advertising claims, which depend on disputed questions of fact.**

Allen argues Inland lacks standing to assert its false advertising claims under 15 U.S.C. § 1125(a) and Washington's CPA. Dkt. 47 at 25–26. It argues Inland cannot establish an injury to a commercial interest in reputation or sales, which is "not surprising given they do not compete with one another." *Id.* at 25, 27 (citing *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). Allen cites to Michael Robinson's deposition, in which he testified he was unaware of any sales Inland had lost because of Allen's "Made in USA" representations. *Id.* at 26–27 (citing Dkt. 98 at 48). Inland argues it has standing because it is Allen's direct competitor and provides rebuttal testimony from its Rule 30(b)(6) deponent Gabrielle Jones Robinson. Dkt. 122 at 23–24 (citing Dkt. 120-7 at 3–4).

Allen also argues Inland cannot prove the elements of false advertising. Dkt. 47 at 28–30. Inland asks the Court to defer ruling on this claim until Allen complies with this Court's prior Order granting Inland's motion to compel, Dkt. 108.

The Lanham Act "authorizes suit by any person who believes that he or she is likely to be damaged by a defendant's false advertising." *Lexmark*, 572 U.S. at 129 (citing 15 U.S.C. § 1125(a)(1)). The Supreme Court has interpreted this narrowly to mean that the plaintiff "must plead (and ultimately prove) an injury to a commercial interest in

sales or business reputation proximately caused by the defendant's misrepresentations."

*Id.* at 140. This occurs when the defendant's "deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. While the "diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, is it not the only type of injury cognizable under § 1125(a)." *Id.* at 138; *see ThermoLife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, at *2 (9th Cir. 2022) (a plaintiff can show that any false advertising necessarily injured its business).

To have standing under § 1125(a), Inland need only adequately allege it was proximately harmed—commercially or reputationally—by Allen's misrepresentations. *Lexmark*, 572 U.S. at 140. The Court determines Inland has done so. Its complaint alleges it is injured by Allen's "Made in USA" labels, and that Allen's false advertising, with its unauthorized use of Inland's trademarks, "is likely to cause consumers to believe . . . that [Allen's] services are sold, authorized, endorsed, or sponsored by Inland, or that [Allen] is in some way affiliated with or sponsored by Inland." Dkt. 12 at 18–19. Inland alleges "[a]s a direct and proximate result" of Allen's actions, it has "suffered and will continue to suffer monetary loss and irreparable injury to its business, reputation, and goodwill." *Id.* at 19. Allen insists Inland is not a direct competitor, but the law is clear that direct competition is not required to assert § 1125(a) claims.

Allen also spends much time arguing Michael Robinson's deposition proves Inland has no such commercial or reputational injury, but Gabrielle Jones Robinson's deposition, Dkt. 120-7 at 3–4, and declaration, Dkt. 121, suggest otherwise. In her deposition, she testified in general terms about how Allen's conduct was damaging, and

ORDER - 27

in her declaration, she asserts specifically that Inland has suffered "both monetary and reputational harm." Dkt. 121 at 2. She asserts Inland has received complaints about "cheap or bad quality packaging" and the "quality of the product going down." *Id.* at 3. She further states that Allen's misrepresentations about its products being "Made in USA" have resulted in consumers attributing "the poor quality" of Allen's products to "the fact that they are made abroad (i.e., not made in the USA)." *Id.* (citation modified). Based on this conflicting testimony, whether Inland has actual "evidence of injury proximately caused" by Allen remains a question of fact. *Lexmark*, 572 U.S. at 140. At this stage, however, Inland "is entitled to a chance to prove its case." *Id.*

Inland has standing to pursue its false advertising claims. Because at least one of the elements of false advertising depends on disputed facts, Allen's summary judgment motion on this claim is DENIED.

**5.      Inland's unjust enrichment claim depends on disputed questions of fact.**

Allen argues Inland's unjust enrichment claim fails because "Inland has conferred no benefit upon Allen that was not paid for." Dkt. 47 at 32–33. It argues any licensing agreement would foreclose Inland's unjust enrichment claim. *Id.* at 33. Inland responds that it has not been compensated for Allen's unauthorized use of the Breakthrough mark and associated goodwill. Dkt. 122 at 31.

If a jury finds that there was no express or implied licensing agreement, Inland may seek compensation through its unjust enrichment claim. Restitution from unjust enrichment is based on "quasi contract," also known as contract implied in law. *Orser v.*

ORDER - 28

*Select Portfolio Servicing, Inc.*, No. C05-1507C, 2005 WL 3478126, at *3 (W.D. Wash. Dec. 20, 2005). Under Washington law, "a party to a valid express contract is bound by the provisions of that contract, and may not disregard the same and bring an action on an implied contract relating to the same matter, in contravention of the express contract." *U.S. for Use & Benefit of Walton Tech., Inc. v. Weststar Eng'g, Inc.*, 290 F.3d 1199, 1204 (9th Cir. 2002) (citation modified).

The existence of any express or implied licensing agreement remains an unresolved factual issue. Should it not exist, Inland provides adequate evidence of Allen's use of the Breakthrough mark for a reasonable jury to decide any unjust enrichment claim in its favor.

Allen's summary judgment motion on Inland's unjust enrichment claim is DENIED.

**6.      Allen's § 1114 trademark infringement counterclaim fails because it provides no evidence of any infringing use.**

Inland moves for summary judgment on Allen's § 1114 trademark infringement counterclaim. Dkt. 86 at 26. Inland argues the record establishes "Inland never sold any products bearing either the BCT mark or B-Shield logo" and thus, there can be no consumer confusion. *Id.* at 26–28. In response, Allen highlights Inland's November 2024 trademark application, which includes images of Allen's products. Dkt. 112 at 27.

Allen's president, Brian Cavanaugh, testified that although Allen has been investigating for over one year, it has yet to find any Inland products that infringe on Allen's marks. Dkt. 86-5 at 83–84. When asked what Inland products bear Allen's marks,

Cavanaugh answered, "The products that were identified to the USPTO with pictures." *Id.* at 80. However, Inland has never claimed those products as its own and has even acknowledged they are Allen's products incorporating Inland's Breakthrough mark. Dkt 47 at 7. Allen provides no other evidence of any infringing use by Inland. Even viewing the evidence in the light most favorable to Allen, a reasonable jury could not find that Inland infringed on Allen's marks.

Inland's motion for summary judgment on Allen's § 1114 trademark infringement counterclaim is GRANTED.

**7.    Allen's copyright infringement counterclaim survives summary judgment.**

Finally, Inland moves for summary judgment on Allen's copyright infringement counterclaim. Dkt. 86 at 29. Inland argues the Copyright Office's rejection of Allen's labels shows they are not copyrightable. Dkt. 86 at 29. It contends, that in any case, its inclusion of Allen's labels in its trademark application falls under fair use. *Id.* at 30. Allen responds that the labels' copyrightability remains a factual question and that a fair use defense is inapplicable here. Dkt. 112 at 28–29.

To succeed on a copyright infringement claim, the plaintiff must show (1) ownership of a valid copyright, and (2) that the defendant copied constituent elements of the work that are original. *Woodland v. Hill*, 136 F.4th 1199, 1206 (9th Cir. 2025), *cert. denied*, 224 L. Ed. 2d 162 (2026) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991)). The Copyright Act allows a plaintiff to bring an infringement action after "one of two things happen—a 'registration of the copyright claim has been

ORDER - 30

made' or 'has been refused.'" *UAB "Planner5D" v. Facebook, Inc.*, 534 F. Supp. 3d 1126, 1130 (N.D. Cal. 2021) (citing 17 U.S.C. § 411(a)). Where the Copyright Office refuses registration, the Court must make an "independent determination as to copyrightability." *Id.* at 1134 (citation modified).

Allen is correct that the Court cannot grant summary judgment on the copyright claim simply because the Copyright Office refused registration. While Inland contends the labels lack any original expression, this argument is not adequately briefed. Labels, particularly creative ones, can be copyrighted. *ABRO Indus., Inc. v. 1 NEW Trade, Inc.*, No. 3:14-CV-1984-TLS, 2017 WL 4954698, at *6 (N.D. Ind. 2017). Allen's labels' copyrightability remains a factual issue.

The fair use doctrine is an equitable principle that "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *McGucken v. Pub Ocean Ltd.*, 42 F.4th 1149, 1157 (9th Cir. 2022). Examples of fair use include "criticism, comment, news reporting, teaching, scholarship, or research." 17 U.S.C. § 107. Fair use is not copyright infringement. *Id.*

Courts weigh four statutory factors in deciding whether fair use applies: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the

copyrighted work. 17 U.S.C. § 107. Fair use is a mixed question of law and fact, and is often decided on summary judgment. *McGucken*, 42 F.4th at 1158.

### i. Purpose and character

The first factor, the purpose and character of the defendant's use, requires the Court to assess "whether the infringing work is transformative and whether it is commercial." *Id.* Transformative use of the original work can tip the first factor in favor of fair use. *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 983 F.3d 443, 452 (9th Cir. 2020). On the other hand, "commercial use of copyrighted material is presumptively an unfair exploitation" of a copyright. *Monge v. Maya Mags., Inc.*, 688 F.3d 1164, 1176 (9th Cir. 2012).

There is no dispute that Inland included clear pictures of Allen's products bearing the labels. Dkt. 30-1 at 47–49. There was no transformation. The parties disagree, however, on whether the trademark application is commercial in nature. Allen persuasively argues that a trademark application has a commercial purpose. Dkt. 112 at 29. A trademark applicant must state a "bona fide intention to use the mark in commerce." 15 U.S.C. § 1126. *See, e.g., U.S. v. Mongol Nation*, 370 F. Supp. 3d 1090, 1122 (C.D. Cal. 2019) (citation modified) ("Trademark ownership is always appurtenant to commercial activity.").

Because Inland's use was neither transformative nor non-commercial in nature, this factor weighs against a finding that Inland's use of Allen's marks was fair use.

### ii. Nature of copyrighted work

The next factor, nature of the copyrighted work, considers "the extent to which [the work] is creative and whether it is unpublished." *McGucken*, 42 F.4th at 1161 (citation modified). "The unpublished nature of a work is a key, though not necessarily determinative, factor tending to negate a defense of fair use." *Dr. Seuss*, 983 F.3d at 456 (citation modified). This factor "has not been terribly significant in the overall fair use balancing." *Id.*

Allen's labels are undoubtedly published because they are pasted onto consumer products. But the labels arguably comprise creative, artistic features. *See* Dkt. 112 at 28 (describing visual features of Allen's labels). This factor is neutral in the fair use analysis.

### iii. Amount and substantiality of the portion used

The Court next considers the "'the quantitative amount and qualitative value of the original work used in relation to the justification for that use.'" *McGucken*, 42 F.4th at 1162 (quoting *Dr. Seuss*, 983 F.3d at 456). If the infringer uses the "heart" of an individual copyrighted work, this factor weighs against fair use. *Id.*

Inland included significant portions of the labels in its images of Allen's products. Dkt. 30-1 at 47–49. Because Inland used the "hearts" of the labels in its trademark application, this factor weighs against fair use.

### iv. Market effect

The fourth factor requires the Court to consider "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor assesses "not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort

engaged in by the defendant would result in a substantially adverse impact on the potential market' for the original" and "the market for derivative works." *Dr. Seuss*, 983 F.3d at 458. This is the "single most important element of fair use." *Monge*, 688 F.3d at 1180.

Inland makes the compelling argument that its use has little, if any, effect on the market for Allen's labels (not the products themselves). Dkt. 86 at 30. But there is nothing in the record about this issue and Allen has not briefed it. The record lacks sufficient evidence for the Court to decide this factor on summary judgment.

Because the market effect is the most important element of fair use, the Court cannot rule on whether fair use is an available defense on summary judgment.

Inland's summary judgment motion on Allen's copyright infringement counterclaim is DENIED.

### III.  ORDER

Inland's motion to dismiss Allen's counterclaims, Dkt. 47, is **DENIED**.

Inland's summary judgment motion, Dkt. 80, is **GRANTED in part** and **DENIED in part**. The motion is **GRANTED** only as to Allen's § 1114 trademark infringement counterclaim. That claim is **DISMISSED with prejudice**.

Allen's summary judgment motion, Dkt. 89, is **DENIED**.

Inland's motion to strike and for sanctions, Dkt. 101, and the parties' pending motions to seal, Dkts. 100, 111, 117, 126, and 131, will be addressed separately in a forthcoming Order. The parties should consider consolidating or otherwise streamlining their motions to seal going forward.

ORDER - 34

**IT IS SO ORDERED**.

Dated this 29th day of May, 2026.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 35